IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02966-PAB

ASSOCIATION OF CHRISTIAN SCHOOLS INTERNATIONAL,
SAMARITAN MINISTRIES INTERNATIONAL,
TAYLOR UNIVERSITY,
INDIANA WESLEYAN UNIVERSITY,
ASBURY THEOLOGICAL SEMINARY, and
ALLIANCE DEFENDING FREEDOM,

      Plaintiffs,

v.

SYLVIA M. BURWELL, in her official capacity as Secretary of the United States
Department of Health and Human Services,
THOMAS E. PEREZ, in his official capacity as Secretary of the United States
Department of Labor,
JACOB J. LEW, in his official capacity as Secretary of the United States Department of
the Treasury;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
UNITED STATES DEPARTMENT OF LABOR, and
UNITED STATES DEPARTMENT OF THE TREASURY,

      Defendants.
_____

**ORDER**
_____

      This matter is before the Court on two motions for a preliminary injunction: one

filed by plaintiffs Association of Christian Schools International ("ACSI"), Samaritan

Ministries International ("SMI"), Taylor University, and Indiana Wesleyan University

("IWU") [Docket No. 11] (the "original motion"), and a second motion filed by plaintiffs

Asbury Theological Seminary ("ATS") and Alliance Defending Freedom ("ADF") [Docket

No. 24].[1]  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

Plaintiffs are Christian non-profit organizations challenging a particular aspect[2] of the contraceptive coverage requirement of the Patient Protection and Affordable Care Act (the "Act"), 42 U.S.C. § 300gg-13(a)(4) (the "mandate").  Plaintiffs' principal claim – and the sole basis for their preliminary injunction motion – is that the mandate imposes a substantial burden on their religious exercise in violation of the Religious Freedom Restoration Act ("RFRA").   42 U.S.C. § 2000bb *et seq.*[3]

### A.  The Mandate

The mandate requires group health plans, including both insured and self-insured employer-based plans, to include minimum coverage for a variety of preventative health measures at no cost to covered beneficiaries.  42 U.S.C. § 300gg-13(a); *see also id.* § 300gg-91(a) (defining "group health plan").  With respect to women's health, the Act required the Health Resources and Services Administration ("HRSA") to develop "comprehensive guidelines" that would define the required preventative services that must be covered free of charge.  *Id.* § 300gg-13(a)(4).

---

[1]After filing the original motion, plaintiffs filed an amended complaint, Docket No. 23, adding ATS and ADF as parties to this action.  ATS and ADF's motion for preliminary injunction contains no substantive argument, but rather "incorporate[s] by reference the facts and arguments set forth in the original [p]laintiffs' motion for preliminary injunction."  Docket No. 24 at 1.  All cites to the preliminary injunction motion in this Order are to the original motion, and all cites to the complaint are to the amended complaint.

[2]*See infra* at 9 n.5; *see also* Docket No. 19 at 9.

[3]Both plaintiffs and defendants represented to the Court that there was no need for oral argument or to submit stipulated facts.  *See* Docket Nos. 18, 20.

HRSA, in reliance on work performed by the independent Institute of Medicine, established guidelines for women's preventative services that include screening for gestational diabetes, human papillomavirus testing, counseling for sexually transmitted infections, and, as relevant to this motion, "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." *See* Health Resources and Servs. Admin., *Women's Preventive Services Guidelines*, http://www.hrsa.gov/womensguidelines.

In February 2012, the three agencies responsible for the Act's implementation – the Department of Health and Human Services ("HHS"), the Department of Labor ("DOL"), and the Department of the Treasury ("Treasury") (collectively, the "Departments") – each issued regulations that adopted the HRSA's guidelines, thus requiring group health plans to cover contraceptive services. *See* 45 C.F.R. § 147.130(a)(1)(iv) (HHS); 29 C.F.R. § 2590.715-2713(a)(1)(iv) (DOL); 26 C.F.R. § 54.9815-2713(a)(1)(iv) (Treasury).

### 1. The Religious Employer Exemption

In August 2011, HHS issued an interim final regulation that adopted HRSA's guidelines as applied to contraceptive coverage. *See* 76 Fed. Reg. 46621 (Aug. 3, 2011). In light of concerns over "the effect on the religious beliefs of certain religious employers if coverage of contraceptive services were required in the group health plans in which employees in certain religious positions participate[,]" the interim final regulation provided HRSA with discretion to exempt certain religious employers from the mandate. *Id.* at 46623. This exemption would apply to any employer that

3

(1) Has the inculcation of religious values as its purpose; (2) primarily employs persons who share its religious tenets; (3) primarily serves persons who share its religious tenets; and (4) is a non-profit organization under section 6033(a)(1) and section 6033(a)(3)(A)(I) or (iii) of the [Internal Revenue] Code. Section 6033(a)(3)(A)(I) and (iii) refer to churches, their integrated auxiliaries, and conventions or associations of churches, as well as to the exclusively religious activities of any religious order.

*Id.*; *see also* 45 C.F.R. § 147.131(a).  The stated purpose of the exemption was to "respect[] the unique relationship between a house of worship and its employees in ministerial positions."  76 Fed. Reg. at 46623.  The exemption did not apply to organizations, like plaintiffs, that share the beliefs of exempt entities but do not qualify as houses of worship or their auxiliaries.  The interim final regulations required employers not subject to the exemption to begin covering preventive services, including contraception, as of August 2012.  *Id.* at 46624.

### 2.  *The Eligible Organization Accommodation*

In January 2012, HHS Secretary Kathleen Sebelius announced that non-profit employers who, based on religious objections, did not provide contraceptive coverage in their insurance plans (referred to as "eligible organizations" in the regulations), would be given a one-year extension, until August 2013, to comply with the law.  *See* Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius (Jan. 20, 2012), *available at* http://www.hhs.gov/news/press/2012pres/01/20120120a.html.  This "temporary enforcement safe harbor" was officially announced in February 2012, and the Departments indicated that they would work "to develop alternative ways of providing contraceptive coverage without cost sharing with respect to non-exempted, non-profit

religious organizations with religious objections to such coverage."  77 Fed. Reg. 8725,

8728 (Feb. 15, 2012).

In July 2013, after the conclusion of a notice and comment period, the

Departments issued final rules providing for an accommodation for eligible

organizations (the "original accommodation").  78 Fed. Reg. 39870 (July 2, 2013); *see*

*also* 45 C.F.R. §§ 147.131 (HHS); 26 C.F.R. § 54.9815-2713A (Treasury); 29 C.F.R.

§ 2590.715-2713A (DOL).  The original accommodation was intended to "protect[] . . .

nonprofit religious organizations with religious objections to contraceptive coverage

from having to contract, arrange, pay, or refer for such coverage."  78 Fed. Reg. at

39871.  Under the original accommodation, eligible organizations wishing to opt out of

paying for the mandate were required to fill out a self-certification form, EBSA Form

700–Certification ("Form 700").[4]  Form 700 requires eligible organizations to certify that

they "ha[ve] a religious objection to providing coverage for some or all of any

contraceptive services that would otherwise be required to be covered."  The form

states that "the organization or its plan . . . must provide a copy of this certification to

the plan's health insurance issuer (for insured health plans) or a third-party

administrator (for self-insured health plans) in order for the plan to be accommodated

with respect to the contraceptive coverage requirement."  The original accommodation

did not require eligible organizations to send a copy of Form 700 to any of the

Departments, but instead required only that the organizations maintain a copy of the

self-certification and make it available for inspection upon request.  78 Fed. Reg. at

---

[4]*Available at*
http://www.dol.gov/ebsa/pdf/preventiveserviceseligibleorganizationcertificationform.pdf.

39890.

For institutions with insured health plans, once the insurance issuer received the self-certification form, the issuer was required to "[p]rovide separate payments for any contraceptive services required to be covered . . . for plan participants and beneficiaries for so long as they remain enrolled in the plan."  29 C.F.R. § 2590.715-2713A(c)(2)(i)(B).  The issuer was prohibited from "impos[ing] any cost-sharing requirements . . . or impos[ing] any premium, fee, or other charge, or any portion thereof, directly or indirectly, on the eligible organization, the group health plan, or plan participants or beneficiaries."  *Id.* § 2713(A)(c)(2)(ii).  In the case of self-insured health plans, when a third-party administrator received the self-certification form, it was required to "provide or arrange payments for contraceptive services" either by providing the payments itself or by arranging for an issuer or another entity to provide the payments.  29 C.F.R. § 2590.715-2713A(b)(2)(i), (ii).  The third-party administrator was also prohibited from imposing any fee on the eligible organization, either directly or indirectly.  *Id.* § 2590.715-2713A(b)(2)(ii).

In July 2014, the Supreme Court preliminarily enjoined the requirement that any party seeking to opt out of the mandate fill out Form 700 as specified in the regulations governing the original accommodation.  *Wheaton Coll.  v. Burwell*, --- U.S. ----, 134 S. Ct. 2806 (2014).  Specifically, the Court enjoined HHS from enforcing the original accommodation against a non-profit organization that had notified the Secretary of Health and Human Services in writing of its eligibility for the accommodation, even though the organization had not completed Form 700.  *Id.* at 2807.

In August 2014, the Departments issued a new interim final rule in response to

6

the Court's order in *Wheaton*.  *See* 79 Fed. Reg. 51092 (Aug. 27, 2014).  The new

interim final rule modified the notice requirements for organizations that wished to

invoke the accommodation (the "new accommodation").  *See id.*   Consistent with the

Supreme Court's order in *Wheaton*, the new accommodation

> provides that an eligible organization may notify HHS in writing of its religious
> objection to coverage of all or a subset of contraceptive services.  The notice
> must include the name of the eligible organization and the basis on which it
> qualifies for an accommodation; its objection based on sincerely held
> religious beliefs to providing coverage of some or all contraceptive services
> (including an identification of the subset of contraceptive services to which
> coverage the eligible organization objects, if applicable); the plan name and
> type . . .; and the name and contact information for any of the plan's third
> party administrators and health insurance issuers.

*Id.* at 51094-95.  The interim final rule noted that the required information "represents

the minimum information necessary for the Departments to determine which entities are

covered by the accommodation, to administer the accommodation, and to implement

the policies in the July 2013 final regulations."  *Id.* at 51095.  While eligible

organizations are still permitted to use Form 700, they are no longer required to do so

under the new accommodation.

After notice is provided to HHS, a separate notification is sent (by DOL in the

case of self-insured plans or by HHS in the case of insured health plans) to the plan's

third-party administrator or health insurance issuer.  79 Fed. Reg. at 51095.  That

notification informs the administrator or health insurance issuer of the organization's

religious objection to the mandate, and provides for continuing contraceptive coverage

for the organization's employees at no cost to the organization.  *See id.*

7

### B.  RFRA

Congress enacted RFRA in direct response to the Supreme Court's holding in *Employment Division, Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872 (1990). In *Smith*, the Court held that laws of general applicability do not violate the Free Exercise Clause even if complying with those laws burdens individuals' religious beliefs. *Id.* at 884-85.  In so holding, the Court abandoned the "compelling interest" test that it had previously applied to claims under the Free Exercise Clause.  *See, e.g.*, *Sherbert v. Verner*, 374 U.S. 398 (1963); *Wisconsin v. Yoder*, 406 U.S. 205 (1972).  The stated purposes of RFRA are: "(1) to restore the compelling interest test as set forth in *Sherbert v. Verner* . . . and *Wisconsin v. Yoder* . . . and to guarantee its application in all cases where free exercise of religion is substantially burdened; and (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government."  42 U.S.C. § 2000bb(b).

RFRA provides that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1(a).  RFRA recognizes only one exception, where the substantial burden (1) furthers a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.  *Id.* §§ (b)(1)-(2).  "Congress directly referenced and incorporated the legal standards the Supreme Court used in its pre-*Smith* line of cases in RFRA.  Constitutional free exercise clause cases that predate *Smith* accordingly remain instructive when determining RFRA's requirements."  *Priests For Life  v. U.S. Dep't of Health & Human Servs.*, --- F.3d ----, 2014 WL 5904732 at *9

8

(D.C. Cir. Nov. 14, 2014) (citing *Kaemmerling v. Lappin*, 553 F.3d 669, 678-80 (D.C.

Cir. 2008)).

### C.  Plaintiffs' Objection to the Mandate and Accommodation

Plaintiffs are non-profit organizations that object to certain methods of

contraception that they believe are abortifacients, including Plan B, ella, and

intrauterine devices.[5]  Plaintiffs "hold, as a matter of religious conviction, that it would be

sinful and immoral for them intentionally to participate in, pay for, facilitate, enable, or

otherwise support access to abortion, which destroys human life." *Id.* at 2, ¶ 2.

Plaintiffs argue that the mandate violates RFRA by "impos[ing] enormous pressure

upon [them] to violate their religious convictions and significantly undermines their

ability to pursue their affirmative religious objectives."  Docket No. 11 at 5.[6]  In their

complaint, plaintiffs allege that invoking the new accommodation via written notice to

---

[5]*See* Docket No. 23 at 8, ¶ 28 (plaintiff ACSI's opposition to "abortion-causing drugs and devices like Plan B, ella, and [intra-uterine devices]"); 12, ¶ 45 (plaintiff SMI's objection to same); 15, ¶ 66 (plaintiff Taylor University's opposition to "abortion-causing drugs and devices like Plan B and ella"); 19, ¶ 85 (plaintiff IWU's opposition to "abortion-causing drugs and devices like Plan B and ella"); 24, ¶ 108 (plaintiff ATS's objection to same); 28, ¶ 130 (plaintiff ADF's objection to "elective abortion or the use of any abortifacient"); *see also* Docket No. 19 at 9.

[6]In addition to their RFRA claims, plaintiffs bring claims for violation of the Free Exercise Clause of the First Amendment, the Establishment Clause of the First Amendment, the Free Speech Clause of the First Amendment, the Due Process Clause of the Fifth Amendment, the right of freedom of expressive association, and violation of the Administrative Procedure Act.  *See* Docket No. 23.  Plaintiffs' preliminary injunction motion, however, is based solely on their RFRA claim and does not discuss the preliminary injunction factors in relation to any of their other claims for relief.  *See* Docket No. 11 at 5-11.  Plaintiffs' proposed order likewise only suggests that an injunction should be granted based on plaintiffs' likelihood of success on their RFRA claim.  *See* Docket No. 11-1 at 2.  Accordingly, the Court does not consider any of plaintiffs' other claims for relief in this Order.

HHS would "trigger" plaintiffs' third-party administrators' provision of coverage for the methods of contraception that plaintiffs find objectionable.  Docket No. 23 at 46, ¶ 230. Plaintiffs allege that, as a result of this "trigger," plaintiffs would "continue to play a central role in facilitating free access to abortifacient services" even under the new accommodation.  *Id.* ¶ 232.  According to plaintiffs, any "participat[ion] in or facilitat[ion]" of the mandate violates their religious convictions.  *Id.* at 47, ¶ 235.  Defendants do not dispute that plaintiffs' claimed objections to the mandate and the accommodation are sincere.

## II.  ANALYSIS

To justify the issuance of a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).  Because RFRA claims are analogous to First Amendment claims, plaintiffs' likelihood of success on the merits will often be the determinative factor.  *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145-46 (10th Cir. 2013) (citing *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012)), *aff'd by Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014).

Plaintiffs' motion makes little mention of the new accommodation and why plaintiffs believe it fails to alleviate the substantial burden the mandate places on their religious exercise.  *See* Docket No. 11 at 5-9.  Plaintiffs' primary argument is that the

10

Court should adopt the reasoning of Judge William Pryor's concurrence in *Eternal Word Television Network, Inc. v. Sebelius*, 756 F.3d 1339 (11th Cir. 2014).  In that case, the plaintiff sought a preliminary injunction based on four objections to the mandate: (1) that the plaintiff would "trigger" a third-party's obligation to make payments for contraceptive services for the plaintiffs employees and beneficiaries, (2) that the plaintiff would have to participate in provision of coverage for contraceptive services by identifying its employees to the third-party administrator and by notifying the administrator when employees and beneficiaries need to be removed or added to the plan, (3) that the plaintiff would have to find a new third-party administrator if its extant administrator also objected to providing contraceptive coverage on religious grounds, and (4) that the mandate barred the plaintiff from telling a third-party administrator to disregard the instructions on Form 700 or otherwise influencing the administrator's decision to provide contraceptive coverage.  *Id.* at 1342-43.  Plaintiffs' complaint repeats only one of those objections as applied to the new accommodation, that providing notice "triggers" the provision of contraceptive services, *see* Docket No. 23 at 46, ¶ 230, and their preliminary injunction motion does not elaborate on this objection.  *See* Docket No. 11.

In his concurrence, Judge Pryor stated that the requirement that the plaintiff deliver Form 700 to the third-party administrator of its health care plan substantially burdened the plaintiff's religious exercise because it required an action that the plaintiff believed "makes it complicit in a grave moral wrong[.]"  *Eternal Word*, 756 F.3d at 1348. Judge Pryor further stated that "[s]o long as the [plaintiff's] belief is sincerely held and undisputed . . . we have no choice but to decide that compelling the participation of the

11

[plaintiff] is a substantial burden on its religious exercise." *Id.*  According to Judge Pryor, as long as plaintiffs sincerely believe that an action compelled by the government substantially burdens its religious exercise, courts are powerless to conclude otherwise.

In contrast to Judge Pryor's concurrence, the Sixth, Seventh, and D.C. Circuits have rejected the argument that mandatory self-certification under Form 700 imposed a substantial burden on religious exercise by requiring religious organizations to "trigger" provision of contraceptive coverage.  *See Univ. of Notre Dame v. Sebelius*, 743 F. 3d 547 (7th Cir. 2014), *Mich. Catholic Conference & Catholic Family Servs. v. Burwell*, 755 F.3d 372 (6th Cir. 2014), *Priests For Life*, 2014 WL 5904732.  In each of these cases, the courts concluded that whether a required action substantially burdens religious exercise is a matter of law for the court to decide, regardless of the parties' sincere beliefs that submitting Form 700 made them complicit in providing contraceptive coverage.  *See Notre Dame*, 743 F.3d at 558 ("Notre Dame may consider the [self-certification] process a substantial burden, but substantiality – like compelling governmental interest – is for the court to decide"); *see also Mich. Catholic Conference*, 755 F.3d at 385 ("although we acknowledge that the [plaintiffs] believe that the regulatory framework makes them complicit in the provision of contraception, we will independently determine what the regulatory provisions require and whether they impose a substantial burden on [plaintiffs'] exercise of religion"); *Priests for Life*, 2014 WL 5904732 at *12 ("[a]ccepting the sincerity of [p]laintiffs' beliefs, however, does not relieve this Court of its responsibility to evaluate the substantiality of any burden on [p]laintiffs' religious exercise, and to distinguish [p]laintiffs' duties from obligations

imposed, not on them, but on insurers and [third-party administrators].").

The Court finds that plaintiffs' argument that the mere invocation of a sincerely held belief divests the court of discretion to decide whether a governmental mandate substantially burdens religious exercise "collapses the distinction between sincerely held belief and substantial burden." *Priests For Life*, 2014 WL 5904732 at *14. Affording an objector's sincere belief determinative weight as to the "substantial burden" requirement of RFRA would have the effect of removing the word "substantial" from the statute. Under plaintiffs' approach, any burden, no matter how *de minimis*, would satisfy the requirement so long as the religious objector's belief in the burden is sincere. Yet courts are "to give meaning to every word used in a statute to realize congressional intent." *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1039 (10th Cir. 2006).

Plaintiffs' interpretation is also inconsistent with the Tenth Circuit's application of the "substantial burden" requirement. For example, in *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010), the Tenth Circuit considered a Muslim inmate's claim that prison officials who had forced him to accept certain foods on his meal tray substantially burdened his religious exercise under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*[7] The plaintiff in *Abdulhaseeb* claimed that the presence of Jell-O and pudding, which may contain pork products, rendered all of the food on his tray contaminated and inedible and that he

---

[7]Although *Abdulhaseeb* was decided under RLUIPA, the Tenth Circuit's analysis of substantial burden applies equally to RFRA claims. *See Abdulhaseeb*, 600 F.3d at 1313, n.5 (recognizing that RLUIPA merely "applies the RFRA standard to protect the religious exercise of persons residing in or confined to institutions . . . such as prisons" ) (citation omitted).

was therefore forced to choose between eating nothing and violating his religious beliefs. *Abdulhaseeb*, 600 F.3d at 1321.  Although the Tenth Circuit did not question the sincerity of the plaintiff's religious beliefs, it found that as a matter of law the prison officials' conduct did not substantially burden his religious exercise because plaintiff had provided evidence of only one instance where he was forced to accept the objectionable foods on his tray, along with a general allegation that the practice continued.  *Id.* (citing *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999), a free exercise clause case, for the notion that a *de minimis* burden on a sincerely held belief does not violate RLUIPA).  The Tenth Circuit observed that "as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but held that, as a matter of law, the evidence presented by the plaintiff did not create an issue of fact as to whether his religious exercise was substantially burdened.  *Id.*

Although the facts of *Abdulhaseeb* are different from this case, the *Abdulhaseeb* court recognized that under RLUIPA, and by extension under RFRA, courts may properly find that certain burdens on religious exercise are *de minimis* and not substantial.  Accordingly, notwithstanding the sincerity of plaintiffs' beliefs as to the effect of complying with the mandate, the Court has an independent obligation to analyze the actions required of plaintiffs and to determine whether the compelled action rises to the level of a substantial burden.

Plaintiffs state that their religious convictions do not allow them to "pay for, facilitate, enable, or otherwise support access to abortion[.]" Docket No. 23 at 2, ¶ 2.

14

The new accommodation does not require them to do so.  All that plaintiffs are required to do under the new accommodation is provide a single sheet of paper that attests to their sincere religious objection and identifies their insurance provider or third-party administrator.  *See* 79 Fed. Reg. at 51094-95.  Plaintiffs claim that, by invoking the new accommodation via written notice, they would be "enabling the government's scheme to facilitate free access to abortifacient services[.]"  Docket No. 23 at 46, ¶ 231.  But plaintiffs' involvement with the administration of the mandate ends the moment they submit the written notice opting out of paying for contraceptive coverage.  Plaintiffs' objection is not to the notice they must submit to the government, but rather to the actions of third parties that will occur afterwards.  But "[f]ederal law, not the religious organization's signing and mailing the [opt-out notice], requires health-care insurers, along with third-party administrators of self-insured health plans, to cover contraceptive services."  *Notre Dame*, 743 F.3d at 554; *see also Mich. Catholic Conf.*, 755 F.3d at 387 (rejecting the "trigger" argument because "it is federal law that requires the insurance issuer or the third-party administrator to provide this coverage"); *Priests For Life*, 2014 WL 5904732 at *16 ("the insurers' or TPAs' obligation to provide contraceptive coverage originates from the [Act] and its attendant regulations, not from plaintiffs' self-certification or alternative notice").

Plaintiffs argue that under the mandate, plaintiffs' decision to offer their employees health benefits is a but-for cause of those employees' access to free abortifacients.  Docket No. 19 at 8.  The concept of but-for causation, however, goes too far in this context.  *See Notre Dame*, 743 F.3d at 554-55.  Plaintiffs have no right to "require the Government to conduct its own internal affairs in ways that comport with

15

the religious beliefs of particular citizens." *Bowen v. Roy*, 476 U.S. 693, 699 (1986)

(holding, in a pre-*Smith* Free Exercise Clause case, that plaintiff's religious exercise

was not burdened by the government's use of his daughter's social security number).

Accordingly, plaintiffs "do not suffer substantial burdens under RFRA where the only

harm to them is that they sincerely feel aggrieved by their inability to prevent what other

people would do to fulfill regulatory objectives after they opt out." *Priests for Life*, 2014

WL 5904732 at *11.[8]  Plaintiffs also argue that by exempting rather than

accommodating religious employers, the government has admitted that the exemption

is "the best way to avoid substantially burdening a religious entity's religious exercise."

Docket No. 19 at 2-3.  The Court disagrees.  The Departments' decision to fashion a

different arrangement for churches and their affiliates begs the question of whether the

mandate, as augmented by accommodations, substantially burdens plaintiffs' religious

exercise.  As explained above, the Court concludes that it does not.

 The Court finds that the new accommodation imposes a *de minimis* rather than a

substantial burden on plaintiffs' religious exercise.  In light of this finding, plaintiffs have

---

 [8]While not determinative, as plaintiffs point out, the Court notes that in *Burwell v. Hobby Lobby Stores, Inc.*, the Supreme Court cited the accommodation as a potential option to accommodate the religious beliefs of the for-profit corporation plaintiffs while continuing to provide contraceptive coverage to their employees.  134 S. Ct. 2751, 2782 (2014).  Although *Burwell* did not conclude that the accommodation satisfies RFRA, *see id.*, Justice Kennedy wrote an a separate concurrence that the accommodation "equally furthers the Government's interest but *does not impinge on the plaintiffs' religious beliefs*." *Id.* at 2786 (emphasis added).  The Court further notes that Judge Pryor's concurrence in *Eternal Word*, which plaintiffs urge the Court to adopt wholesale, *see* Docket No. 11 at 8, identified the new accommodation as an example of a permissible means to effectuate the mandate. *Eternal Word*, 756 F.3d at 1349 ("[t]he United States, for example, could require the [plaintiff] to provide a written notification of its religious objection to the Department of Health and Human Services, instead of requiring the [plaintiff] to submit Form 700[.]").

not established a likelihood of success on the merits and are therefore not entitled to a preliminary injunction.  As a result, the Court need not address the remaining preliminary injunction factors or whether the mandate satisfies the "compelling interest" test under RFRA.  *Priests For Life*, 2014 WL 5904732 at *9 ("if the law's requirements do not amount to a substantial burden under RFRA, that is the end of the matter"); *see also Russell v. Dep't of Air Force*, 915 F. Supp. 1108, 1122 (D. Colo. 1996) ("having decided that [plaintiff] has not shown clearly that he has a substantial likelihood of success on the merits, I need not address the remaining factors . . . ."); *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999) (noting that if a plaintiff fails to meet the "threshold requirements" of showing "likelihood of success and irreparable injury" then "the court's inquiry is at an end and the injunction must be denied") (citing *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiffs Association of Christian Schools International, Samaritan Ministries International, Taylor University, and Indiana Wesleyan University's Motion for Preliminary Injunction [Docket No. 11] is **DENIED**.  It is further

**ORDERED** that plaintiffs Asbury Theological Seminary and Alliance Defending Freedom's Motion for Preliminary Injunction [Docket No. 24] is **DENIED**.

DATED November 26, 2014.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge